Case 1:06-cv-01935-JDB Document 7 Filed 10/01/2006 Page 1 of 8
Case 1:06-cv-01935-JDB Document 7 Entered on FLSD Docket 10/01/2006 Page 1 of 8
Document    Page 1 of 8

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GREEN MILLER, JR., <br><br> Plaintiff, <br><br> v. <br><br> DISTRICT OF COLUMBIA, ET AL., <br><br> Defendants. | Civil Action No. 06-1935 (JDB) |

MEMORANDUM OPINION

Plaintiff Green Miller, Jr. seeks a temporary restraining order ("TRO") and a permanent injunction setting aside defendant District of Columbia's ("defendant" or "the District") sale of two of his properties at a tax auction on July 12, 2006. For the reasons set forth below, the Court will deny plaintiff's motion for a TRO and set a briefing schedule for defendant to file a motion to dismiss.

BACKGROUND

The facts, which defendant does not dispute, are drawn from plaintiff's complaint and the attachments thereto. Plaintiff owned a group of properties in the mid-1990's. As is relevant here, he owned four properties located at (a) 1330 Belmont Street NW, (b) 1332 Belmont Street NW, (c) 2560 University Place NW, and (d) 6920 Eighth Street NW. Plaintiff owed back taxes on all four of these properties. He filed a bankruptcy petition in April of 1996. Although the filing of that petition activated the automatic-stay provision of 11 U.S.C. § 362, the District notified plaintiff of its intent to take possession of the Belmont Street properties. On September 20, 1996,

1

the District filed suit in Superior Court to remove the cloud of title over those properties. Unbeknownst to plaintiff, however, defendant had already taken title to 1330 and 1332 Belmont through a pair of deeds issued by the mayor to the District's "Homestead Housing Preservation Program" in August of 1996. The District's quiet-title suit was eventually dismissed when one of Belmont's lien holders alerted the Superior Court to the automatic stay.

In September of 1997, the bankruptcy court issued an order confirming the reorganization plan proposed by plaintiff. Article IV of the reorganization plan, entitled "Treatment of Claims," contemplated that plaintiff would retain ownership of the Belmont properties, but stated that if he did not sell the properties within six months for an amount sufficient to pay the back taxes or donate the properties to a non-profit group, then he would have to "abandon all claims to the lots and consent to the relief sought in the D.C. Superior Court proceeding." A consent order filed the following summer modified the original reorganization plan in some respects and also clarified that plaintiff would "consent to judgment in any quiet title action" brought by defendant if he was "unable to pay off the Real Property Taxes on said lots as provided in the Confirmed Plan." Article VIII of the reorganization plan provided that the bankruptcy court would "retain jurisdiction of this case to . . . determine any matters arising concerning the title to property of the Debtor, or the sale thereof."

In August of 1998, one month after the reorganization plan was modified, plaintiff learned that the District had taken title to the Belmont properties two years earlier. The District finally returned the Belmont properties to plaintiff via a quit-claim deed in June of 2002. Meanwhile, taxes on the two remaining properties, one on Eighth Street NW and another on University Place NW, continued to accrue. Believing that the damages he had suffered over the two years during

which defendant possessed the Belmont properties exceeded the taxes that he owed on the two other properties for the 2005 year, plaintiff refused to pay those taxes. On July 12, 2006, the District sold the Eighth Street and University Place properties at a tax sale.

In his pro se complaint, plaintiff seeks a TRO and a permanent injunction setting aside the tax sales of the 6920 Eighth Street NW and 2560 University Place NW properties, an award of rent for the six-year period of allegedly unlawful possession, compensatory damages for emotional distress and mental anguish, punitive damages, and attorney's fees and costs. "[B]ecause a permanent injunction is only appropriate after a trial on the merits," Int'l Ass'n of Machinists and Aerospace Workers v. Nat'l Mediation Bd., 374 F. Supp. 2d 135, 137 n.1 (D.D.C. 2005), plaintiff's motion for a TRO is the only aspect of his suit ripe for resolution at this point.

## DISCUSSION

The purpose of a TRO "is to preserve the status quo and prevent imminent harm pending fuller briefing and a hearing on [a] request for injunctive relief." Bradshaw v. Veneman, 338 F. Supp. 2d 139, 141 (D.D.C. 2004). In deciding whether to issue a TRO, the Court considers the same four factors used to determine whether preliminary injunctive relief is appropriate. See Morgan Stanley DW, Inc. v. Rothe, 150 F. Supp. 2d 67, 72 (D.D.C. 2001); see also Al-Fayed v. Cent. Intelligence Agency, 254 F.3d 300, 303 n.2 (D.C. Cir. 2001). Under this inquiry, a movant must demonstrate (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction is not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction. Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006)

(citations omitted).  These familiar four factors should be balanced, and a "particularly strong" showing in one area can justify an injunction "even if the showings in other areas are rather weak."  Id.; see also Guam Indus. Services, Inc. v. Rumsfeld, 383 F. Supp. 2d 112, 116 (D.D.C. 2005) (noting that the four factors "should be balanced on a sliding scale," and that "a party can compensate for a lesser showing on one factor by making a very strong showing on another factor").  Furthermore, "[p]robability of success is inversely proportional to the degree of irreparable injury evidenced," such that injunctive relief "may be granted with either a high probability of success and some injury, or vice versa."  Cuomo v. U.S. Nuclear Reg. Comm'n, 772 F.2d 972, 974 (D.C. Cir.1985) (per curiam).  The movant must, however, "demonstrate 'at least some injury' for a preliminary injunction to issue."  See Chaplaincy of Full Gospel Churches, 454 F.3d at 297 (citation omitted).

     Although he cites a similar (but not identical) standard from a D.C. Court of Appeals case, plaintiff generally recognizes his burden.  He maintains that he is likely to prevail on the merits because defendant violated the terms of the court-approved reorganization plan by taking the Belmont properties in 1996 and violated its own laws by selling the other two properties at the tax sale in July of this year.  Pl.'s Motion at 2-3.  As for the second prong, he argues that real estate is unique and that the loss of real property thus constitutes "irreparable harm."  Id. at 3.  Plaintiff also maintains that the balance of harms weighs in his favor; indeed, he says that he is willing to deposit into the Court registry the amount for which the properties were sold at the tax sale to assure that the District will not be prejudiced by injunctive relief.  Finally, he asserts that a TRO would further the public interest by holding public officials accountable for violation of the laws.  Id.

Even assuming that events transpired exactly as plaintiff describes them, he has failed to demonstrate a likelihood of success on the merits of his suit that would support awarding the extraordinary remedy of a TRO. First and most criticially, there are serious questions as to this Court's jurisdiction over the case. As defendants point out, the federal Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, bars district courts from enjoining, suspending, or restraining "the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." See Roswell v. LaSalle Nat'l Bank, 450 U.S. 503, 512 (1981).[1] District of Columbia law supplies the required remedies in the form of a detailed statutory scheme (found at Chapter 13A of Title 47 of the D.C. Code) governing the redemption and foreclosure of property. See D.C. Code §§ 47-1360 to -1385. Moreover, even if the TIA does not apply, an analogous D.C. statute, D.C. Code § 47-3307, similarly prohibits courts from enjoining "the assessment or collection by the District of Columbia or any of its officers, agents, or employees of any tax." Federal courts, including the Seventh Circuit in an opinion by Judge Posner, have held that a tax sale "is a mode of tax collection," and consequently that "an action to enjoin it, or declare it illegal, or rescind it . . . would be barred by the [TIA]." Wright v. Pappas, 256 F.3d 635, 637 (7th Cir. 2001); see also, e.g., Bouchard v. Clinton County, Civ. A. No. 06-418, 2006 U.S. Dist. LEXIS 22937, at *9-*19 (N.D.N.Y. April 25, 2006);

---

[1] The Court recognizes that the D.C. Circuit has not definitively resolved whether the District of Columbia qualifies as a state for purposes of the federal Tax Injunction Act. See Jenkins v. Washington Convention Center, 236 F.3d 6, 7 (D.C. Cir. 2001). In Jenkins, another member of this court, whose ruling the court of appeals affirmed without reaching the issue, conducted a thorough analysis of the question and concluded that the District did qualify as a state under the statute. Jenkins v. Washington Convention Center, 59 F. Supp. 2d 78, 81-82 (D.D.C. 1999). The Court's analysis above with respect to the common language of the federal and D.C. statutes eliminates the need to take a position on this unresolved question, at least at this time.

Deshazo v. Baldwin County, Civ. A. No. 06-0174, 2006 U.S. Dist. LEXIS 51118, at *9-*10 (S.D. Ala. July 25, 2006). This conclusion, which rests on the rationale that a tax sale constitutes a "mode of tax collection," Wright, 256 F.3d at 637 (emphasis added), applies with equal force to the local statute, since that provision also employs the term "collection." See D.C. Code § 47-3307 ("No suit shall be filed to enjoin the assessment or collection by the District of Columbia or any of its officers, agents, or employees of any tax."). Hence, the TIA and the analogous D.C. statute (or both) likely deprive this Court of jurisdiction over plaintiff's suit. The distinct possibility that this Court lacks jurisdiction greatly lessens, if not altogether eliminates, plaintiff's likelihood of success on the merits of his claims in this Court.[2]

Plaintiff cannot compensate for his inability to demonstrate a likelihood of success on the merits with a strong showing of irreparable harm, which "is the sine qua non of the preliminary injunction inquiry." Trudeau v. Federal Trade Com'n, 384 F. Supp. 2d 281, 296-97 (D.D.C. 2005), aff'd, 456 F.3d 178 (D.C. Cir. 2006). Although it is true that real estate constitutes a unique interest, courts still require movants to demonstrate specific, as opposed to speculative, harm under the particular circumstances. E.g., Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 7 (1st Cir. 1991); Mitchell v. Century 21 Rustic Realty, 233 F. Supp. 2d 418, 431 (E.D.N.Y. 2002) ("[L]oss of real property does not cause irreparable harm per se[.]"). Moreover, the focus

---

[2] The three other bases for this Court's jurisdiction invoked by plaintiff- - 28 U.S.C. § 158, D.C. Code § 47-847, and the previous orders of the bankruptcy court, see Compl. at 3 - - are similarly unavailing. The first, 28 U.S.C. § 158, grants district courts appellate jurisdiction over challenges to decisions of bankruptcy courts, while the second establishes only that a cause of action may lie under District of Columbia law. As for the third, Article VIII of the reorganization plan approved by the bankruptcy court states that that court would "retain jurisdiction of this case to . . . determine any matters arising concerning the title to property of the Debtor, or sale thereof." Plaintiff's present action appears to be one that concerns "the title to property of the Debtor, or the sale thereof," and would accordingly fall within the jurisdiction of the bankruptcy court, rather than this Court.

at the TRO stage is on whether the alleged harm is imminent. See Trudeau, 384 F. Supp. 2d at 297 ("To demonstrate that he would suffer irreparable harm if an injunction does not issue, plaintiff must show that the harm he faces is imminent and certain, rather than remote and speculative."). Here, plaintiff has failed to identify any concrete upcoming event that the Court must enjoin in order to preserve the status quo. To the contrary, his complaint and motion are backward-looking in nature, requesting that the Court essentially void tax sales that occurred several months ago. Insofar as he seeks monetary damages for defendant's allegedly unlawful occupation of the Belmont properties, plaintiff has an adequate remedy at law.

More importantly, as mentioned above, plaintiff also has a remedy under D.C. law for the sale of the Eighth Street and University Place properties. Indeed, the very statute that plaintiff cites, D.C. Code § 47-847, provides a six-month period after a tax sale for a party to "redeem[]" the property by paying "all taxes or assessments due the District of Columbia upon said property, and all legal penalties, interests and costs thereon, together with such other expenses and costs, including costs of publication, as may have been incurred by the District."[3] That provision is just one part of a detailed statutory scheme governing the District's handling of property tax delinquencies, redemption, and foreclosure. Plaintiff does not explain why, if he has funds that he is willing to deposit with the Court, he cannot avail himself of the procedures provided by statute or, at a minimum, raise his objections as a defense in the feared future foreclosure action by the purchasers of the two properties. See D.C. Code § 47-1370(b)(3), (d). Accordingly, the Court concludes that plaintiff has failed to demonstrate that he will suffer imminent and irreparable harm absent injunctive relief.

---

[3] As alleged by plaintiff, the tax sale occurred on July 12, 2006, far less than six months ago.

Having determined that plaintiff's motion flounders at the critical first and second steps of the inquiry, the Court need not, and will not, address the two remaining factors. See, e.g., Farris v. Rice, - - F. Supp. 2d - - , 2006 U.S. Dist. LEXIS 68228, at *6 (D.D.C. Sept. 25, 2006) ("If a party moving for injunctive relief fails to show irreparable injury, the court need not consider the remaining factors for issuance of a preliminary injunction."); Coleman-Adebayo v. Leavitt, 326 F. Supp. 2d 132, 143 (D.D.C. 2004) ("In the absence of a likelihood that plaintiff can prevail on the merits of her . . . claim, the other factors relating to the availability of preliminary injunctive relief . . . need not be addressed in detail."). At the same time, the Court's strong doubts on the issue of jurisdiction do not amount to a definitive determination that jurisdiction is lacking; nor has defendant sought dismissal for lack of subject matter jurisdiction at this point. The Court will therefore provide an opportunity for defendant to seek dismissal of the complaint and for plaintiff to respond to defendant's arguments. A briefing schedule is included in the order that accompanies this Memorandum Opinion.

## CONCLUSION

Because plaintiff has not identified any immediate harm that he faces, and because there is substantial doubt as to whether this Court even has jurisdiction over this suit, plaintiff's motion for a temporary restraining order is denied. A separate order has been posted on this date.

/s/ John D. Bates
JOHN D. BATES
United States District Judge

Dated:  November 20, 2006