The document below is hereby signed.

Signed: December 03, 2009.



_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re                              )
                                   )
GREEN MILLER, JR.,                 )    Case No. 96-00431
                                   )       (Chapter 11)
              Debtor.              )
_____  )
                                   )
GREEN MILLER, JR.,                 )
                                   )
              Plaintiff,           )
                                   )
       v.                          )    Adversary Proceeding No.
                                   )    08-10028
DISTRICT OF COLUMBIA, *et*         )
*al.*,                             )
                                   )    **Not for publication in**
              Defendants.          )    **West's Bankruptcy Reporter**

MEMORANDUM DECISION RE DISTRICT OF
<u>COLUMBIA'S MOTION SEEKING TO DISPOSE OF PROCEEDING</u>

This decision addresses the Motion to Dismiss Adversary

Proceeding or, in the Alternative, Motion for Summary Judgment

filed by the defendant, the District of Columbia.[1]  For the reasons set forth below, I will grant in part and deny in part the defendant's motion.

I

The background facts are not in dispute.  Throughout the 1990's, the plaintiff, Green Miller, Jr., owned four properties located at (a) 1330 Belmont Street NW, (b) 1332 Belmont Street NW, (c) 2560 University Place NW, and (d) 6920 Eighth Street NW, on which he owed back taxes.  The District of Columbia conducted tax sales on the two Belmont Street properties ("Belmont Properties") in June 1991, November 1991, June 1992, November 1992, and June 1995.  The statutory redemption period on the properties expired in January 1996.

On April 2, 1996, Miller filed for bankruptcy relief in this court, activating the protection of the automatic stay of 11 U.S.C. § 362(a).  Thereafter, on June 7, 1996, the District sent Miller notice of impending transfer of the Belmont Properties to occur on July 7, 1996, if the properties were not redeemed by that time.  Miller failed to redeem, and the mayor deeded the Belmont Properties to the Homestead Housing Preservation Program ("HHPP") on August 8, 1996.

---

[1] There is no return of service demonstrating that the summons and complaint were served on the other defendant, Lynn C. French who is alleged to have served as Administrator of the D.C. Homestead Program.  Accordingly, I will treat the District as the sole defendant at this juncture.

On September 20, 1996, the District filed a suit to quiet title on the Belmont Properties in the District of Columbia Superior Court.  Upon becoming aware of Miller's pending bankruptcy case, however, the Superior Court dismissed the quiet title proceeding.

In August 1998, Miller became aware that the District had transferred title to the Belmont Properties to HHPP.  Then, on June 11, 2002, the District quitclaimed the properties back to Miller.  On March 26, 2004, Miller entered into a contract for the sale of the Belmont Properties for $2.1 million and ultimately consummated the sale.

Finally, on November 13, 2006, Miller filed his complaint against the District in the United States District Court for the District of Columbia, seeking, among other things, damages against the District for violating the automatic stay.  The District Court dismissed all of Miller's claims except the claim for automatic stay violation, which it referred to this court for disposition.  In his complaint, Miller asks for (a) compensatory damages, (b) damages for lost rent from the time the District held title to the properties, (c) damages for stress and mental anguish, and (d) punitive damages.  For ease of organization, I will address the District's motion as applied to each of the claims for damages.

II

A.

Compensatory Damages

Under 11 U.S.C. § 362(h) (re-numbered in 2005 as 11 U.S.C. § 362(k), pursuant to an amendment that was not made effective as to this case), "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, punitive damages."[2] Miller has claimed compensatory damages in the amount of $4,171,343, which is profit he alleges he would have earned had he been able to develop the Belmont Properties while the District held title. In its motion, the District argues that Miller is not entitled to compensatory damages because Miller's lack of financial capacity was the proximate cause of his loss of business opportunity, not the District's alleged violation of the stay. Specifically, the District avers that Miller "lacked the financial capacity to obtain financing from NationsBank, or anyother financial institution, to develop the Belmont Properties."

---

[2] Compensatory damages are also recoverable in some instances for a violation of the automatic stay based on the court's civil contempt power, but the instances in which damages are recoverable, and the damages that are recoverable under the statutory remedy, are at least as extensive as under the civil contempt remedy. Any dismissal of claims based on the statutory remedy necessarily requires a dismissal as well of claims based on the court's civil contempt power.

4

A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law.  Fed. R. Civ. P. 56 (c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). In addressing a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its] favor."  *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Whether any disputed issue of fact exists is for the court to determine. *Balderman v. United States Veterans' Admin.*, 870 F.2d 57, 60 (2d Cir. 1989).  The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986).  Once such a showing has been made, the non-moving party must present "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  The party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation."  *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).  Moreover, not every disputed factual issue is material in light of the substantive law that governs the case.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Anderson*, 477 U.S. at 248.

5

The Statement of Material Facts in Support of the District's Motion for Summary Judgment establishes these facts:

1. Miller and his company, GM II, encountered serious financial difficulties beginning in 1992.

2. By the middle of 1993, Miller and GM II had $200,000 in outstanding loans from NationsBank.

3. In November 1994, Miller wrote to NationsBank and requested an extension of the loans until 1998, the disbursement of additional funds, and NationsBank's participation in developing the Belmont Properties.

4. Miller was not successful in restructuring his loans or obtaining financial assistance from NationsBank to develop the Belmont Properties.

5. In 1995, the outstanding loans that NationsBank had made to GM II had reached maturity and the Bank informed Miller that it would no longer extend his loans.

6. Based on Miller's payment defaults, NationsBank determined that Miller could not maintain the loan at prevailing interests rates and that he was a bad risk for NationsBank.

7. Miller's financial problems were not limited to his relationship with NationsBank. The Department of Housing and Urban Development initiated foreclosure

       proceedings on 2566 University Place NW due to Miller's payment defaults.

8. Riggs National Bank foreclosed on two of Miller's other rental properties in 1994.

9. Miller was unable to pay his property taxes.

10. Miller had insufficient operating capital to meet his personal and family obligations and had no other source of income.

These facts, the District contends, show that Miller was not creditworthy and therefore could not develop the Belmont Properties. Because Miller could not develop the properties, the defendant argues, the District was not the proximate cause of the compensatory damages Miller is claiming and therefore not liable.

The District has met its initial burden under *Celotex* to show an absence of material facts in dispute regarding Miller's ability to develop the Belmont Properties during the period when the District held title and, therefore, the District being the proximate cause of Miller's lost profits. Consequently, the burden now shifts to Miller under Fed. R. Civ. Proc. 56(e) to demonstrate that there is a genuine issue of material fact regarding his compensatory damages.

In response to the District's motion, Miller filed his own

7

motion for summary judgment.³  Even electing to treat Miller's motion for summary judgment as an opposition to the District's motion, Miller's motion does nothing to demonstrate that there is a material issue of fact outstanding regarding whether he had the means to develop the properties in the first instance.  Rather, Miller's motion sets out facts that could constitute a violation of the automatic stay, but provides no evidence as to the extent of any damage he suffered or in any way seeks to rebut the District's argument that he could not have procured financing to develop the properties.  Because Miller has failed to meet his burden under Rule 56(e) to show that there is a material fact in issue regarding whether the District alleged violation of the automatic stay were the proximate cause of the compensatory damages he suffered, summary judgement in favor of the District on the issue of compensatory damages is appropriate.⁴

---

   ³  It is important to note that Miller filed this motion pro se, although he was represented by counsel at the time.  Though this is a grounds for striking the motion, because the motion does nothing to rebut the District's motion, I opt to forego striking it.

   ⁴  It bears noting that actions in violation of the automatic stay are void. *See In re Henneghan*, No. 03-01216, 2009 WL 2855835, at *3 (Bankr. D.D.C. June 15, 2009).  Even if the void title of the District were a cloud on Miller's title, he could easily have obtained a judgment from this court decreeing that the District's title was void.  Any damages incurred in pursuing such a decree would have been minimal.  A debtor cannot claim huge damages for violation of the automatic stay when the debtor failed to take steps to mitigate those damages.  *See In re GeneSys, Inc.*, 273 B.R. 290, 296 (Bankr. D.D.C. 2001).

B.

Lost Rental Damages

The next damages that Miller claims in his complaint are damages for lost rent on the Belmont Properties for the time the District held title to them.  The summary judgment portion of the District's motion, addressing the compensatory damages that Miller claims, rests on two arguments that do not suffice to support summary judgment as to the claim for lost rent.  The first argument, that this court should give collateral estoppel effect to rulings in Miller's adversary proceeding against NationsBank, only speaks to Miller's ability to develop the properties.  Nothing in this argument speaks to his ability to rent the properties as, say, a parking lot, which could have been impaired because he did not hold title to the properties.  Moreover, the second argument, that Miller could not obtain financing, likewise does not speak to his ability to rent the properties during the time the District held title.  Consequently, summary judgment as to the lost rent claim is improper.[5]

Alternatively, however, the District also argues that the court should dismiss the case. First, the district argues that

---

[5] Again, however, Miller's damages would be limited by his failure to take steps to mitigate his damages.

9

dismissal is proper because Miller's claims should be barred by the doctrine of laches.  Second, the District asks the court to dismiss based on Miller's failure to prosecute and for discovery abuses.

The purpose of a motion to dismiss is "to test the legal sufficiency of the complaint." *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003). In deciding a motion to dismiss, although the court "must construe the allegations and facts in the complaint in the light most favorable to the plaintiff . . . ," *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 195 (D.D.C. 2002), the complaint must nevertheless plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint . . . . [nor must it] accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). In deciding a motion to dismiss, "the Court may only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt*, 226 F. Supp. 2d at 196.

Regarding the District's laches argument, a motion to

dismiss is not the proper way to raise it. To prevail on a defense of laches, the party asserting the defense has the burden of proving a "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121 (2002). These are, by their nature, factual inquiries, *E.E.O.C. v. Great Atlantic & Pacific Tea Co.*, 735 F.2d 69, 81 (3d Cir. 1984), and therefore inappropriate for resolution through a motion to dismiss, *see Major v. Plumbers Local Union No. 5*, 370 F. Supp. 2d 118, 128 (D.D.C. 2005); *Nat'l Fair Housing Alliance, Inc. V. Prudential Ins. Co. Of Am.*, 208 F. Supp. 2d 46, 48 (D.D.C. 2002). Moreover, it is inappropriate to treat the District's motion to dismiss as a motion for summary judgment. Although the District included exhibits accompanying its motion, none of them address the prejudice to the District. Consequently, dismissal of Miller's claim for lost rent on the basis of laches is inappropriate at this time.

Regarding the District's motion to dismiss for lack of prosecution and discovery abuses, dismissal of the adversary proceeding is also improper on these bases. First, there has been no failure to prosecute this case by Miller. Except for missing a hearing allegedly due to illness, a failure that I have dealt with separately, Miller has acted to prosecute this adversary proceeding. Moreover, the District has failed to

demonstrate why Miller's alleged discovery abuses would warrant dismissing the case.

Fed. R. Civ. Proc. 37(b)(2)(A)(v) empowers the court to dismiss a proceeding where a party has disobeyed a discovery order.  Nothing in the District's motion alleges that Miller has violated a discovery order of this court.  To be sure, the District has alleged practices by Miller that might rise to the level of an abuse of discovery and would warrant the court issuing an order compelling discovery, but until Miller is in violation of such order, dismissal under Rule 37(b)(2)(A)(v) is inappropriate.

Nor is dismissal under Rule 37(d) appropriate.  Rule 37(d) allows the court to dismiss a case when a party fails to attend his own deposition, or utterly fails to serve answers, objections, or written responses to interrogatories.  All the District alleges in its motion is that it was not satisfied with Miller's answers in the depositions and his responses to interrogatories, not that he failed to attend the deposition or utterly failed to respond to the interrogatories.  Consequently, dismissal is improper under Rule 37(d)

Finally, the District has cited to nothing that provides the court with the authority to dismiss a case because of a pattern of alleged discovery abuses.  Moreover, Miller's conduct in this adversary proceeding to date has not risen to such a level that

would warrant dismissal at this time.  Accordingly, the District's motion to dismiss on this basis also fails.

### C.

### Damages for Stress and Mental Anguish

Miller's third claim of damages is for stress and mental anguish.  In its motion, the District asserts the same bases for dismissal as I addressed in the lost rental income section.

First, for the reasons stated above, the summary judgment portion of the District's motion only speaks to Miller's ability to obtain financing to develop the Belmont Properties and therefore does not provide a basis to dismiss these damages. Nothing in the motion speaks to or is relevant to a determination of whether the District's alleged violation of the stay caused Miller to suffer damages for stress and mental anguish. Accordingly, summary judgment on this basis is inappropriate.[6]

Second, also for the reasons stated above, the motion to dismiss portion of the District's motion does not provide a basis for the relief the District requests.  Again, because the defense of laches is by its nature a factual determination, a motion to dismiss is not the appropriate way to raise it.  Moreover,

---

[6] The District has not addressed whether damages for stress and mental anguish are recoverable under § 362(k), (or what was § 362(h) when this alleged violation of the stay occurred).

13

because the District did not attach exhibits that speak to the prejudice the District allegedly suffered as a result of Miller's delay, I cannot treat the motion to dismiss as a motion for summary judgment.  Finally, again for the reasons stated above, Miller has not failed to prosecute this case and the alleged abuses of discovery do not rise to a level that would warrant dismissal at this time.  Accordingly, the District's motion to dismiss or alternative motion for summary judgment with regards to Miller's claims of damages for stress and mental anguish must also fail.

D.

Punitive Damages

Miller's final claim is for punitive damages in the amount of $1.5 million.  The District seeks to dispose of these damages under the summary judgment and motion to dismiss theories outlined above.  I need not reach those grounds, however, because § 106(c)(3) of the Bankruptcy Code prevents Miller for recovering punitive damages from the District.  Section 106(a) abrogates the sovereign immunity of a governmental unit under various sections of the Bankruptcy Code, including under § 362.  But § 106(c)(3) provides that:

> The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, **but not including an**

14

**award of punitive damages.**

*Id. (*emphasis added*).* Section 101(27) defines "governmental unit" to include any "State; Commonwealth; District; Territory; [or] Municipality; . . . [and any] department, agency, or instrumentality of . . . a State, a Commonwealth, a District, a Territory, [or] a municipality." As a matter of law, then, Miller's punitive damages claim is appropriately dismissed.

### III

For the foregoing reasons, I will grant the District's motion for summary judgment on Miller's claim for compensatory damages and its motion to dismiss Miller's claim for punitive damages. I will deny, however, the District's motion to dismiss and motion for summary judgment on Miller's claims for damages for stress and mental anguish and Miller's claim for lost rental income. An order follows.

[Signed and dated above.]

Copies to: All counsel of record.