The document below is hereby signed.

Signed: August 11, 2010.



_S.Martin Teel Jr._____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re                           )
                                )
GREEN MILLER, JR.,              )    Case No. 96-00431
                                )       (Chapter 11)
                Debtor.         )
_____  )
                                )
GREEN MILLER, JR.,              )
                                )
                Plaintiff,      )
                                )
        v.                      )    Adversary Proceeding No.
                                )    08-10028
DISTRICT OF COLUMBIA, *et*      )
*al.,*                          )
                                )    **Not for publication in**
                Defendants.     )    **West's Bankruptcy Reporter**

MEMORANDUM DECISION RE DISTRICT OF
COLUMBIA'S SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT

This decision addresses the District of Columbia's

Supplemental Motion for Summary Judgment.[1]  Pursuant to an

earlier Memorandum Decision, the only claims against the District

---

[1]  There is no return of service demonstrating that the
summons and complaint were served on the other defendant, Lynn C.
French, who is alleged to have served as Administrator of the
D.C. Homestead Program.  Accordingly, I will treat the District
as the sole defendant at this juncture.

for violation of the automatic stay that remain are Miller's

claim for lost rents from his Belmont Properties for the time

that the District held title to the Belmont Properties and his

claim for stress and mental anguish.

The earlier Memorandum Decision addressed the background of

this proceeding, but I will repeat here the more relevant facts.

Prior to the commencement of Miller's bankruptcy case, the

District conducted tax sales of the Belmont Properties, and the

statutory redemption period expired in January 1996.  On April 2,

1996, Miller commenced his bankruptcy case, activating the

protection of the automatic stay of 11 U.S.C. § 362(a).

Thereafter, on June 7, 1996, the District sent Miller notice of

impending transfer of the Belmont Properties to occur on July 7,

1996, if the properties were not redeemed by that time.  Miller

failed to redeem, and the mayor deeded the Belmont Properties to

its Homestead Housing Preservation Program ("HHPP") on August 8,

1996.  On September 20, 1996, the District filed a suit to quiet

title on the Belmont Properties in the District of Columbia

Superior Court.  Upon becoming aware of Miller's pending

bankruptcy case, however, the Superior Court dismissed the quiet

title proceeding.  The District neglected, however, to set aside

the conveyance of title to itself.  Miller's plan under chapter

11 of the Bankruptcy Code was confirmed on October 1, 1997, with

an effective date of October 11, 1997, and a Consummation Date (a

defined term in the plan) of no later than January 29, 1998.  It

provided in Article IV that if, "within six months after

consummation," i.e., by no later than six months after January

29, 1998, which would be the end of July 1998, Miller did not

sell the Belmont Properties or obtain the consent of the District

of Columbia to convey the Belmont Properties to a non-profit

group, he was required to "abandon all claims to the lots and

consent to the relief sought in the District of Columbia Superior

Court proceeding."  This was reinforced by a consent order

entered on July 29, 1998, which provided that:

> Debtor will consent to judgment in any quiet title
> action brought by the District of Columbia on pre-
> petition and post petition real property taxes owed on
> [the Belmont Properties] in the event the debtor is
> unable to pay off the real property taxes on said lots
> as promised in the confirmed plan[.]

In August 1998, Miller became aware that the District had

transferred title to the Belmont Properties to HHPP.  Then, on

June 11, 2002, the District quitclaimed the properties back to

Miller.  On March 26, 2004, Miller entered into a contract for

the sale of the Belmont Properties for $2.1 million and

ultimately consummated the sale.

In the earlier Memorandum Decision, I ruled that Miller's

financial inability to develop the properties precluded his

obtaining damages for being unable to develop the properties when

3

they were titled in the name of an instrumentality of the

District, but I ruled that this did not demonstrate that he could

not rent the properties as, say, a parking lot, an opportunity

which could have been impaired because he did not hold title to

the properties.   In addition, Miller's claim for emotional

damages remained an open issue.

I

With regard to Miller's assertion that he is entitled to

damages for lost rent during the time the District held title to

the Belmont Properties, raw land at all relevant times, I will

grant summary judgment.

Miller contends that he could not rent the properties

because title was in the District of Columbia, but Miller's

intent at all times was to develop the property.   There is no

evidence that during the two years (from August 1996 to August

1998) in which he was unaware of the title to the property being

in the District of Columbia, he attempted to rent the property .

The speculative possibility that, after learning of the title

problem, Miller might have attempted to rent the property if

there were no title problem is negated by the lack of evidence

that he attempted to rent the property before he knew of the

title problem and by his testifying that at all times his intent

was to develop the property.[2]

In any event, Miller had a duty to mitigate his damages, and could easily have sought relief from this court if the District's holding title to the Belmont Properties was causing him harm. The District points to this court's earlier observation that:

> It bears noting that actions in violation of the automatic stay are void. *See In re Henneghan*, No. 03-01216, 2009 WL 2855835, at 3 (Bankr. D.D.C. June 15, 2009). Even if the void title of the District were a cloud on Miller's title, he could easily have obtained a judgment from this court decreeing that the District's title was void. Any damages incurred in pursuing such a decree would have been minimal. A debtor cannot claim huge damages for violation of the automatic stay when the debtor failed to take steps to mitigate those damages. *See In re GeneSys*, 273 B.R. 290, 296 (Bankr. D.D.C. 2001).

December 3, 2009 Memorandum Decision at 8, n.4. Miller responds, in effect, that the District was already violating the automatic stay, and thus Miller was reasonable in not seeking an order from this court that the District might similarly disregard. In full, he argues:

> The problem with that suggestion [that Green could have moved in this court for a decree that the District's title was void] is that the District was already violating an order of the Bankruptcy Court when it attempted to take plaintiff's property. A reasonable juror could conclude that the plaintiff was wise to take

---

[2] Moreover, by the time he learned of the title problem he was required by his confirmed plan to abandon any claims to the Belmont Properties, and renting the properties would have been inconsistent with that obligation (at least until the D.C. taxes were fully paid).

> the District on in the Superior Court where an order
> could be obtained that the District could not ignore as
> opposed to going back to the Bankruptcy Court for another
> order for the District to ignore.   The question of
> whether or not the plaintiff failed to mitigate his
> damages is clearly an issue for the trier of fact.

Miller's argument does not demonstrate a genuine issue regarding a material fact.

Miller has remained strangely silent as to what he attempted to do when he learned in August 1998 that the property was titled in the District of Columbia.  His intent was to develop the property, and until he had a realistic prospect of obtaining financing, clearing up the title problem would not have been a pressing matter.  Miller had no notion of renting the property. Damages based on the conjecture that he might have rented the property if title had been in his name are inappropriate.  *See Archer v. Macomb County Bank,* 853 F.2d 497 (6th Cir. 1988).

If, indeed, Miller was really interested in renting the property, he had a ready way of clearing title at no expense to himself.  He could have filed a motion seeking to hold the District in civil contempt for failing to release its void title to the property and seeking to declare its title void.  Failing to pursue that course was unreasonable.  In such a proceeding, he could have employed counsel whose attorney's fees would have been recoverable from the District as a compensatory contempt sanction.  Accordingly, Miller has failed to demonstrate that he was damaged by reason of the District's holding title to the

properties.  He is not entitled to recover attorney's fees that
theoretically would have been incurred in a civil contempt
proceeding if he had brought one prior to the District's having
voluntarily released its void title.

                                II

     Miller also seeks emotional distress damages.  Courts are
split on whether emotional distress damages may be awarded for
violations of the automatic stay under 11 U.S.C § 362(k).  *In re
Dawson*, 390 F.3d 1139, 1148 (9th Cir. 2004); *Aiello v. Providian
Financial Corp.*, 239 F.3d 876 (7th Cir. 2001).  Section 362(k)
specifies that an individual shall recover "actual damages."
After an extensive survey of the law and independent analysis,
the Ninth Circuit held in *In re Dawson* that emotional distress
damages are cognizable under § 362(k).  390 F.2d at 1148.  The
Seventh Circuit, on the other hand, more leery of emotional
distress claims, allows such claims only if the individual has
also suffered financial injury.  *Aiello*, 239 F.3d at 880.  The
Ninth Circuit recognized the danger of false emotional distress
damages as well, but instead of bluntly limiting recovery of such
claims by tying them to financial injury, it established a high
standard for such claims. *In re Dawson*, 390 F.2d at 1148-49.
This court finds the Ninth Circuit's approach to emotional
distress damages for an automatic stay violation well reasoned,
and thus it adopts its standard.

                                7

An individual is only entitled to damages for emotional distress under § 362(k) if she (1) suffered significant emotional harm, (2) clearly establishes the significant harm, and (3) demonstrates a causal connection between that significant emotional harm and the violation of the automatic stay (as distinct, for instance, from the anxiety and pressures inherent in the bankruptcy process). *Id.* Fleeting or trivial anxiety, or medically inconsequential distress is not significant harm and thus not compensable. *Id.* at 1149.

An individual may show clear significant emotional harms in a variety of ways. The best and most credible way is to offer medical evidence, for otherwise it is hard to distinguish between true and frivolous claims. *Id.* Although, medical evidence is often the best, non-expert testimony may also be used, and in certain rare instances, significant emotional distress may be readily apparent without corroborating evidence. *Id.* at 1150. Courts are not persuaded, however, by a party's self-serving claims. The court in *In re Robinson*, 228 B.R. 75 (Bankr. E.D.N.Y. 1998), denied a claim for emotional distress damages when the plaintiff provided no affidavit or other evidence "describing the distress or any consequences of such distress," but rather provided only "unsworn and generalized assertions that debtor was 'concerned,' 'upset,' and needed reassurances to calm her fears." *Id.* at 85. If the plaintiff adequately demonstrates

8

he suffered significant harm, he must then show that this harm

was distinctly caused by the violation of the stay.  *In re

Dawson*, 390 F.3d at 1150.

In his opposition to the District's supplemental motion for

summary judgment, Miller claims that he had "no obligation to

'prove' his damages or any aspect of his case at this stage of

litigation."  To the contrary, Miller did have an obligation to

"set forth specific facts showing that there is a genuine issue

for trial."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986).

Furthermore, summary judgment should be granted when the

"nonmoving party has failed to make a sufficient showing on an

essential element of her case with respect to which she has the

burden of proof."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324

(1986).  Miller has the burden of proof at trial on his emotional

damages claim.

The District points out that Miller has presented no

specific facts demonstrating that he has suffered significant

harm, nor that any significant harm was caused by the District's

violation of the automatic stay, and, thus, has failed to support

an essential element of his claim.  It is also unreasonable to

assume, without further evidence, that the mere fact of learning

the District had title would cause significant emotional harm.[3]

---

[3] By July of 1998, prior to Miller's learning in August 1998
that title was in the District of Columbia, Miller was obligated
under the terms of his confirmed plan to consent to any quiet

Thus, the District is entitled to summary judgment unless Miller

has provided adequate affidavits and other evidence of his claim

demonstrating that there is a sufficient basis for his emotional

damages claim.

At this juncture, the facts of record via affidavit and

admissions and otherwise do not demonstrate that emotional

damages are recoverable under the standard of *In re Dawson*.

During discovery, Miller provided no evidence, medical or

otherwise, sufficient to support his emotional damages claim.  In

response to the District's supplemental motion for summary

judgment he has provided no affidavits or other evidence in

support of his claim.  The only support for his emotional damages

claim comes from his answers to two interrogatories.  In its

interrogatories sent to Miller on April 30, 2009, the District

asked:

> 19. State in detail the damages that you suffered "as a
> direct result of Defendants taking title" to the Belmont
> Properties.

> 20. Describe in detail "the economic loss, humiliation,
> embarrassment, physical and emotional distress and mental
> anguish" that you have suffered as a result of actions
> taken by defendant.

Miller responded:

> 19.  Plaintiff was unable to develop the property and
> realize the profit from that development.

---

title relief the District of Columbia sought on the property if
Miller failed to pay his tax obligations.  *See also* Consent Order
of July 29, 1998.

       20.  See 19 above.  Additionally, Plaintiff was reduced
to begging defendant to give him back that which was
legally his.  Stress of knowing Plaintiff cannot perfect
his Reorganization Plan with the Belmont Properties.


The District asked Miller for a detailed account of his

damages and he replied with general assertions.  In his response

to the District's interrogatory, Miller claims that learning he

did not hold title caused him stress because he could not perfect

his reorganization plan.  This claim is negated for two reasons.

First, by the time Miller learned of the title being in the

District of Columbia, his confirmed plan required him to abandon

all claims to the Belmont properties and to consent to quiet

title relief in favor of the District in any quiet title action

the District brought.  *See also* Consent Order of July 29, 1998.

Miller could not have been significantly harmed by realizing he

did not hold title to property that he would be required to

relinquish anyway if the District elected to pursue a quiet title

action.  Second, even if developing the properties as part of his

reorganization was Miller's objective, this court established in

its memorandum decision of December 3, 2009, that the title issue

was not the reason the defendant could not develop the property.

Thus any emotional distress over not being able to develop the

properties cannot be attributed to the District's holding title.

     While Miller says he was "reduced to begging" the District

to give back his property, this statement does not rise to the

level of significant emotional distress on its own.  Moreover,

Miller had a duty to mitigate his damages:  Miller could easily

have avoided begging the District by seeking relief in this

court.

The District has shown there is no evidence to support any

claim for emotional damages under the *In re Dawson* test, and

Miller has failed to rebut this showing with any evidence

whatsoever.  This absolute lack of evidence supporting a claim

for emotional distress damages makes summary judgment appropriate

in this instance.

                                III

Pursuant to the foregoing, it is

ORDERED that the District's motion for summary judgment is

GRANTED with respect to both Miller's lost rent claim and

Miller's claim for emotional distress damages.


                                            [Signed and dated above.]

Copies to: All counsel of record.